standing that you waive any uninterrupted time and are open for questions by the court. I promise you the court will take you at your word and when we get to Mr. Vesotsky, my understanding is that you will want the uninterrupted period and then move in, is that correct? All right, well good. All right, Mr. Kretzer, you're on. Good morning, Chief Judge Stewart. May it please the court, Seth Kretzer along with Don Bailey, Kevin Ross, and Tiffany Talamantes for the Diggles family. The term oral pronouncement is impacted with a positively elegant simplicity requiring that when a condemned is about to hear his sentence that said be read aloud in open court for the benefit of the defendant, the court, and the public if those same terms and their We argue that the term oral pronouncement, through its text, its history, its structure, through its contemporary understanding does not mean that a judge can then later cross-reference those conditions. They are simply, if they're going to be part of the judgment, rather they have to be read aloud. Now, if one is then going to subsequently challenge on appeal conditions that were never read aloud in the court but nevertheless appeared in the judgment, the very first question is what is the controlling standard of review? And that is not entirely but largely determinative of whether or not that appellant can ultimately prevail in getting those conditions removed. Counsel, can I ask a factual question? I have two related factual questions. This is a situation where the recommended special conditions were provided ahead of in the time period required, correct, to the defense counsel and there's not an issue that there wasn't a translation or anything like that in this case, right? This is not one where just the judge, the district court got them and the defense lawyers did not get them, right? That's correct. That is the practice across the Eastern . . . Okay. Then I have, why if the defendants, Rosie made . . . and I'm sorry I'm calling by the first name but they all have the same last name, I don't mean disrespect, Rosie made five objections to the PSR and Walter and Anita each made two objections to the PSR. If they had a problem with the special conditions and they had them in plenty of time and they were recommended and they knew what the recommendations were going to be, why couldn't they add something to their written objections? Yes, Judge Elroy, we would contend that what makes the, I pardon any redundancy, the special conditions special in this regard is that every defendant going into sentencing knows that a district judge is going to have to resolve those other guidelines objections in order to get what they perceive to be the procedurally correct guideline range. A defendant going into a sentencing does not know if any special conditions will be imposed. That is why what Judge Elroy described, I would say perhaps as a physical opportunity, the meaningful opportunity, that word meaningful, that qualification does not become concrete until such point as the sentencing judge states those aloud. But if they're already recommended, it's not that they're just saying these are the panoply of special conditions. They're actually being recommended specifically for your clients and you've gone over this with them before the hearing and so why couldn't there be an opportunity to write those objections because you know that once they get the special condition, it could be 15 years or something later and while they may have a right to get it modified, they won't have counsel at that part. So it's extremely important that this be done early and it could be done in writing right away as long as you know it's recommended specifically for your client. Yes, Judge Elroy. We would say that, again, it's a structural difference between the special conditions which might not be imposed at all and the other aspects of the PSR. That's why with the comment of the Eastern District of Texas to include these in this last page or appendix of the PSR, you don't see that in most other districts. In many districts, like you saw in Rowland, these special conditions show up for the first time at the sentencing hearing. Right. And that's a different situation, right? You could be surprised if you learn about them for the first time at the hearing and the judges had them for a while but you've just gotten them that day on the fly. I think it goes to our point, Judge Elroy, that until going even as late as going into the sentencing hearing, probation, which is an arm of the court, is still only making recommendations. Just like a court's jury charge is the court's charge, it is still nevertheless the sentencing court that has to say what they thought in this PSR was either to be adopted or not. And you saw that with regard to Walter Diggles, unlike his wife and daughter, where even though he did make some objections to the PSR, when they got to sentencing, Judge Clark found another specific offense characteristic that had not been objected to that he nevertheless said I'm not applying that. Everything in the PSR is just a recommendation. I mean, the guideline range and the total offense level and the criminal history points are all just a recommendation, and yet you'd agree you have to object to those, so I still don't see the distinction. Well, the difference, Judge Costa, is that, yes, in every sentencing, clearly a judge is going to have to determine a base offense level, the quantity or amount of the loss, any specific offense characteristics, criminal history, and so forth. No defendant knows for sure going into sentencing if any special conditions are going to be imposed, especially like what we saw. You don't know for sure if the court's going to impose that adjustment for, you know, a hundred kilograms of cocaine. You don't know what the judge is going to find, but you do know what probation's going to recommend. It's in the PSR, and that typically triggers the objection responsibility. Yes, we would say that there's no doubt, like, there's a physical opportunity, if this comes before the sentencing, within the 30-plus days, to make an objection, but we contend that the opportunity with regard to special conditions of release is not a meaningful opportunity. That essential qualification, that adjective, meaningful until such time as the judge actually says what he is going to impose, partly because, Judge Costa, as you see in this case, probation, as far as we can tell, at least with the no gambling condition, just sort of decided to impose this on a whim. There's not a scintilla of evidence from the trial or in the PSR or any place else that any of these defendants had any sort of gambling problem. That's why we'd argue it's so important, because you have this risk that probation can simply pick a condition without any empirical basis suggesting that it should actually be imposed. Well, when the court says at the hearing, then, do you see page so-and-so the conditions that I'm going to impose, why isn't that a meaningful opportunity to say, wait a minute, this is not a gambling case, it's not a fraud in that way, you know, it's not like you're going to have to do this for the rest of their life or something, you know, sometimes we get, there's no seeming relationship between the conditions and the offense. Why wasn't that a meaningful opportunity? Yes, Judge O'Rourke, that certainly gets closer when it says, even if the specific offense characteristics, the special conditions were not actually stated by the judge, do you see this page of the PSR where these are written? There's no doubt that gets a lot closer than situations like you saw in Hudson, but we would argue that the problem is that this court runs the risk, if there's not a broad rule of general interpretation, you will continue to see situations like that and perhaps other circumstances that I can't even envisage as we stand here right now, litigating in the future what particular idiosyncratic procedure of a district court and of probation in the relevant district comes sufficiently close or not to go the distance. So you have these things that have developed, like in Rowland, where they had this exhibit that got introduced, where you had in Reyes, where they took a break, apparently, during the proceedings. If this court were to make a simple rule, the special conditions have to be released, have to be stated on the record, then you wouldn't have to run this risk of, you know, for years in the future of piecemeal litigation about whether or not this particular procedure was sufficiently close to be meaningful, court by court by court, before we even get to a harm analysis. So you're saying if the special conditions are in the PSR, our amendment to it, that that's sufficient? No, Judge. We said the opposite. If it's simply cross-reference, it's not sufficient. Even though the PSR includes the special conditions, it would not be sufficient, is that correct? Yes, that's our core position. Why is it sufficient for the other conditions that are very important, too? Well, something, everything, we wouldn't say anything is not important, certainly everything would be important. Well, you're not requiring this, you're treating them separately and differently, and I'm trying to get at the doctrinal justification for that. It's obviously not notice, because they're all receiving exactly the same notice. Yes, Judge, under the guidelines, there's a difference, obviously, between mandatory conditions, which, as the name suggests, are going to be implied. What difference does it make whether they're mandatory or not? Well, yes. Except the mandatory tells them that they know, it gives them notice, correct? Yes. So as long as they have notice, then, of what that condition is, that should be sufficient, shouldn't it? Well, it is with regard to standard and mandatory. Well, why is there a difference? The answer to your question, Judge Higginbotham, is directly because everyone knows, every defendant is deemed to know going into— Everyone knows, so it's notice, isn't it? Yes, it's notice. It comes down to notice. So long as this defendant has a fair opportunity and has notice that they're there, he has an opportunity to object, get on his feet, as lawyers do, right? I would say opportunity, if not meaningful opportunity, with regard to the statute. Okay. So as long as his counsel knows, and the judge asks him, counsel, have you discussed—first, yes, the defendant—have you gone over the PSR with you and the material? And he says, yes. And his lawyer talked to you about that, and he asked the counsel, did he understand? Why isn't that sufficient? Yes, Judge Higginbotham, because, although, of course, Rule 32 does say that the defendant and the defense lawyer have to confirm that they got the PSR and reviewed it, that doesn't mean that they reviewed every single thing in that PSR. Well, that's true of all the conditions. Well, that may be true, but, again, there's mandatory and standard that the defendant has known about for a long time. They're specialists, qualitatively different. It becomes mandatory when he puts it in there, I mean, in the sense that this is what he's going to do. Well, it's— I mean, what I'm saying to you is that your argument seems to me to want to exact some  Mr. Higginbotham, if the district court had asked specifically of the defense counsel, have you reviewed the special conditions of release, and, Mr. Defendant, have you reviewed the special conditions of release? So it comes— That would— So it backs up, then, just did the district judge ask single out special conditions, even though they're in the PSR? Well, again, they're not in the PSR. They're in this appendix to the PSR. Well, they're an appendix. Excuse me, an appendix. And it's all part of a package, right? I'm just thinking about, if a defendant specifically—and you saw something similar to this with Rowland and Reyes. If the defendant has said, yes, I have seen those conditions on that sheet right there, yes, that's— But you have to mention the word conditions, is that the deal? You have to mention the word special. Well, they're called special conditions. I don't know how else we would refer to them. I mean— Well, they're in there, and they say what they say. But you want the district judge to say, they're in there, and you reviewed it with the PCR, but I want to also say, I had to read them to it. Are you insisting that they read them to them? Well, again, Judge Hickman, if the situation that the defense counsel has said, yes, I reviewed those special conditions, or whatever we want to call them, the proposed conditions of release, and separately the defendant confirmed that, then maybe not. But if a defendant, as every sentencing I've ever been to, where the district judge, the sentencing judge comes out and just says, have you reviewed the PSR, that's very general.     Yes, sir. Yes, sir. Yes, sir. Yes, sir. Yes, sir. One more question. Yes. Are you saying that pronouncements mean that you have to verbally—the judge has to say this himself, and read him the condition? Yes. That's what you say? Yes. And do you think that's what pronouncement means? Yes. The last time I looked at the word pronouncement, it means just to announce the ruling itself. It does not say—that's an articulation requirement you're asking about. Well, Judge Stiglitz, this is called oral pronouncement, not just pronouncement. It's called oral pronouncement. In all the— Well, oral pronouncement begs the question of what does he say? You say he wants to—you want him to read him this thing. And a pronouncement is, counsel, have you reviewed this PSR with the defendant? We can see— And with this appendix. I'm sorry. Go ahead. We can see some room. Obviously, even if the district judge does not read the—in this case, four conditions allow, literally come out of his mouth, if it was confirmed that the defendant specifically saw those, then maybe. But we would suggest when this en banc panel crafts a rule for all of the judges in the nine districts of this circuit that would be more economical and easier is such a rule because then you won't have to see litigation for years in the future as we litigate one particular idiosyncratic sentencing feature after another, which is what could potentially happen here. We know about the ones—for example, we know what Judge Reed O'Connor in the northern district does. That is the one that Rebus Estrada referred to in one of the footnotes, the L. Hodge case. What he does, in particular, is ask the defendant, have you seen these special conditions of release? And then he has a separate document, which gets its own DKT entry number on PASER, where the defendant specifically signs that he received those conditions. There, I don't think there's any doubt that the defendant received them, saw them, assuming it was translated, of course. So they're not pronounced, but they're okay, right? Well, in that case, the defendant has orally stated at the hearing, yes, I'm signing this document. Well, the defendant pronounced them, and the district court didn't have to. I don't think the defendant read them aloud, Judge. I think he just says, I'm— Well, you're saying the district court has to, quote, pronounce, and you're saying, but he doesn't always have to pronounce. No, Judge, we would say that the rule should be that a district court has to pronounce them. If there's not, you know, okay, there's a little bit of space between here, perhaps, the irreducible minimum and that which the district court does, but the effect will be that you'll see all this litigation for that. I know what Judge O'Connor does, but many different district judges in the circuit may have their own way of— I want to talk about the importance of this and why you think this is so important. Yes, ma'am. Over a million dollars in restitution was ordered to one of the diggles, and 700—a lot of money was ordered in restitution. Was there an objection to the restitution amounts? No. No objection? That's correct. And so the restitution was pronounced before the special conditions were pronounced? I believe so, yes. One of the special conditions was that you have to allow the probation officer to review your financial records to make sure you're complying with your obligation to pay restitution. What possible reasonable objection could there be to that special condition, which is a recommended special condition? Yes. If the certain—I think the government doesn't like it when I use the word tethered, but there's no doubt that there's certain conditions under 5D1.3 that if a certain set of condition precedence, in this case restitution, becomes operant, then those become recommended. There's no doubt that would seem to be, you know, integral to— All we're talking about today is gambling from your standpoint. Is that correct? No, there's also—the government wants to take all four of them back, and also that condition about trade credit. I'm asking about your position. The restitution was announced. There was no objection. The district court said, I'm going to adopt the special conditions recommended by the PSR. One of those was you have to supply your financial records to the probation officer. Are you saying that that should be stricken from the judgment? We would say yes. Why? Yes. The answer is because the oral pronouncement rule—these are still called special. This phrase that the government uses, true special, is not in the guidelines. You knew there was restitution. You knew as a lawyer that the guidelines themselves recommend that specific special condition in these circumstances. The court said he was adopting the special conditions recommended by the PSR. Why shouldn't he be required to object at that point? Well, yes. Object to restitution versus— And why should that be stricken from the judgment when there's no possible reasonable objection to it? We would contend, Judge Owen, that's because these conditions, that particular condition that you're talking about, is still denominated special under 5B1.3. And even though, Judge Owen, to answer your question directly, even though restitution was, of course, recommended in the PSR and there was no objection to it, under the Mandatory Victims Restitution Act, a district court has heightened requirements. They have to find redressable harm, loss. One could still challenge that restitution on plain error even if it wasn't objected to. That's why we would contend the oral pronouncement rule, the issue on which we're here today, would still apply with equal valence even when these other conditions, precedents, are likely. But again, until the point the judge adopts that and then says who the listed payees are, all the things that you have under the MVRA, that you still have that requirement to orally pronounce it. That's good. Yes. I'm not presently convinced by what I see as a special focus rule that would get you out of the duty to object. It seems to me the entire structure of statutes and rules are telling defense attorneys and courts and prosecutors to zero in and focus on conditions. That's the only way to comply with 3583, tailoring, et cetera. My questions are two. Could you speak to me if what the difficulty here for me is when the PSR just lists a variety of conditions but doesn't recommend any one, and then it's sort of overlooked by everybody, but the district judge in the judgment selects and inserts some. That isn't the plain error question. You had no focusing at all that you'd get particular ones. At that point, here's my question. Well, two questions. One is, what's the basis for our rule that then says when it appears in the judgment, it is a conflict and it must be excised? That's one question because most of these conditions are benefiting defendants to try to reenter society after they're in prison. A lot of them relate to victims. I've never understood why as to a discretionary condition that's overlooked but then appears in the judgment, we can't correct it under rules 35 or 36 or modify and enlarge as the statute permits. So that's one question. Why is there integrity to the rule that we have to excise? We can't remand or correct or enlarge. And the second question is, is it at all helpful in this analysis to look at the guideline policy classifications of standard, special, additional, and now we're talking about true special, as opposed to just what the statute in Congress said, which is they're either mandatory, it would be an error to omit them in the judgment, or they're discretionary, in which case fact-finding in Rule 32 had to focus on them. Let me answer your questions in order, Judge Higginson. The answer to your first question, as I understand it, I think is because the due process clause and the confrontation clause, as well as the statutory right to be present at sentencing, require that a defendant be present for all parts. So if something was never stated at the sentencing and appears in the judgment, they necessarily did not have those protections. But Rule 43 and Rule 36 all excuse presence. And in some conditions, they even excuse a hearing. If it's a mistake, a clerical mistake or an oversight, you don't need to be present for that to correct that. That's true, not for a simple clerical mistake. But here we have a condition that was never stated allowed, a combination of conditions allowed at the hearing. I think that goes beyond what anyone would call a clerical mistake. But, for example, forfeiture, which is a huge condition. Yes. The statute explicitly says if it ends up omitted in the judgment, Rule 36 exists to correct it. Rule 36, correct any time. Yes, Judge Higginson. There's no doubt special conditions, at least as the way they have evolved, it seems to be unusual in that it is the only part of the sentencing, unlike restitution, forfeiture, so forth, that there seems to be this sort of wholesale not saying it allowed at sentencing and just cross-referencing as some sort of a time-saving move. I would push back a little bit, Judge Higginson, on your statement that the special conditions there are placed there to benefit the defendant when he or she reenters society. With regard to that no trade credit, line of credit condition, which was modified by the Diggles Panel, if you have, and it's incredibly hard to earn money to pay restitution or anything else when one has a felony conviction, especially when folks reenter society in their 70s, if one could not get a job but one wanted to go to Home Depot, for example, and get a lawnmower or some very simple equipment to capitalize an operation to make a living, the condition, as the government originally requested and as Judge Clark imposed, would inhibit that defendant from being able to go and make that minimal way of living. What about my second question? Sure. I don't want to take all your time. Of course. What about is it helpful at all to use the policy statement classification standard special additional, or should we just stick with 3583's binary considerations? These are mandatory, and if you omit to put them in the judgment, that's error. It has to be corrected, as opposed to discretionary. Yes, Judge Higginson. I think in this Court's panel, Judge Elrod and Judge Higginbotham's concurrences in the Cabello case back in February earlier this year, they went into some detail about the difference between the statutes back in 1984 and then how the sentencing guidelines have since developed. Practitioners like myself, I think, have grown up and are most comfortable with the 5D1.3, the mandatory, optional, and then special, but there's no doubt the statute is the statute, and the statute is much more binary than the trifurcated or even further dissected ways that we seem to classify special conditions. Now, most, I think, sentencing judges and criminal defense practitioners, we've heard prosecutors, the government, are really familiar with what I'll call this nomenclature, the way the guidelines sets it up, but, of course, the statute is the statute. The guidelines are a creature and just exist within the statute. I want to go back to the credit point because I'm struggling to see how you could make a rational argument that these folks should be permitted to gamble with someone else's money, which is essentially what's going on if they were being permitted to gamble while they owe this large amount of restitution. There's no basis like the need to use IT or the need to go to Home Depot or any of those things that you can make to support gambling. So please explain and give me a case site that says when you owe a million dollars, you should still be permitted to gamble that money. Well, yes, Judge Haynes. I can look for a case and come back on rebuttal, but I think the argument there is they gamble with somebody else's money, and yet current wages, for example, are exempt in the judgment collection context. I don't know that anyone has said, even in the prison, they only garnish part of your wages that you make. It's not the situation that every single penny, I guess the question would be gross, net, as earned, nevertheless belongs to the judgment creditor, in this case the restitution victim. No, but there's just simply no basis to say you should be allowed to gamble. There's no need to do it like there might be a need to use a computer by someone who has restrictions on that or, as you say, a credit card because maybe you're starting a new business to try to pay the restitution or whatever. You're going to stand up in front of a judge that's sentencing you when you have a million dollars in restitution and say, Judge, I need to go to a casino. I mean, seriously, that's the question I have, and I'm looking for a case that supports the argument that, yes, I get to go to the casino when I owe the million. Yes, Judge Haynes, here's the question. I can say that with seriousness. It's incredibly hard to pay back a million dollars or anything, a net of $5 or $7 an hour, if one were to go to the casino and hit a big jackpot and make a lot of money. That, under the terms of the restitution order, would be remitted to the government and would satisfy the thing entirely. Perhaps even apart from a casino, a stock market, upstart companies, there's any number of things that people can do with a felony conviction and you can't get a professional license of any kind that might be profitable that would actually get this paid as opposed to a lifelong impediment that no one's ever going to realistically. If you're embezzling money, you're gambling, you're not going to get caught. I'm sorry, what? I would think if you're embezzling money, you're gambling, that you're not going to get caught. You're already in the gambling business. Many things in life and the economy, unfortunately, have a lot of risk-reward. Some of them are legal. Some of them aren't. Mr. Kressel, you're not arguing, though, that there actually needs to be some sort of explanation given for the condition in addition to a pronouncement rule. You're not like a 3553A factor that, you know, like we make people, the judge has to recite all that. You're not saying that with regard to gambling, for example, are you? I see my red light. Can I answer the question? It doesn't free you from answering the question. Okay, that's good because I want to answer it. Judge, we are making a 3553A argument. We think it's incredibly— But you didn't make it in your briefs, did you? Yes, it's true, but the government confessed error in my brief. So I think it's a little ironic they tried to hoist me on that baton when they did a complete 180. I made the argument as under Revis Estrada, the government confessed error. As far as I was concerned, that was good enough for me. We would win, and then they wanted to walk that back. Just briefly, and I'll address this at length in rebuttal, 3553A is not just there to protect the defendant and make sure that the court makes a well-reasoned statement as to why these conditions are being implied. It also is a public interest in the integrity of the court proceedings. I'm not saying that just because that's the last element of a lot of— In the Diggle sentencing, there was media present, local media, not national media. Those reporters cannot get a copy of the PSR before—at any time. It's sealed. You can't give it to them. And yet that reporter sitting there who wanted to cover it did not know what special conditions were imposed because the district judge never orally pronounced it. They merely cross-referenced. That reporter can then go get a copy of the judgment, a public document on PSR, and reading those special conditions in the judgment signed by Judge Clark might be led to believe that any of the Diggles had a gambling problem. We know that's completely untrue. That is one of the reasons 3553 is so important, is there's a public integrity, public confidence in the integrity of the court proceedings to mention here that we think is integral, and I would very much like to talk about more on that. All right. Mr. Kretzer, you've reserved your bulletin. When you come back up—I had a question lingering, but when you come back up on rebuttal, help me out. I'm not clear. Obviously, we're here on Diggles, but I'm not clear in my mind whether you're articulating some bright line rule for the Diggles case or overarching your articulating that the court pronounced some bright line rule that governs every case in the circuit so that every district judge has to follow this template, much in the way of a Rule 11, where there's little deviation. You got to do it this way. It's still not clear to me whether you're doing two things. One, rule for this case versus, because we're in bank, some overarching rule that will come down on ten tablets or whatever, and every judge has to follow. At least help me somewhere within the five minutes that you've reserved. Okay? All right. Got you. All right. Thank you. I'm sorry. Go ahead. I have one other that you can address. Your due process argument on rebuttal, explain to me why a remand and re-sentencing doesn't cure that. Okay. All right. You got your work cut out for you, Mr. Gretzky. All right. Let's hear from the government. Mr. Visosky, is that how you pronounce it? Yes. All right. Sir. Good morning, Your Honors. I'm Bradley Visosky for the United States, and I have with me Stephen A. Stryker, who wrote the brief before the panel decision, argued the case before the panel. Did either of you have the case below, I mean, all the way down to trial level, or you two pick up on the briefing in this part? Correct, Your Honor. We were the appellate attorneys. Tom Gibson, who is the lead trial attorney, is present in the gallery. Okay. Got it. All right. Press ahead. May it please the Court. I'd just like to start by talking about the Eastern District of Texas practice, because it seems to be the focus of a lot of these decisions that have been briefed, Diggles, Rivas-Estrada, Reyes, and Cox. And if there's one thing I would like to convey is that we believe, and I think our judges believe, that this is an eminently fair practice to the defendant, more fair than a lot of the alternatives that are raised in various cases. The process is that the proposed special conditions of supervised release are included in the PSR. So the defendants get pre-sentence notice, and that's a valuable thing. There are a lot of cases where defendants argue, for example, in the Mills case that we cite in the brief, that judges are required to give pre-sentence notice of supervised release condition. And they're not under Mills, but our judges do that. So they have at least 35 days to object. They have the proposed special conditions. In the Diggles particular case, the PSR was originally disclosed on December 6, 2017, and that's in the record at 8067. And sentencing was not until May 22, 2018, and that's the record at 3721. So that's about half a year that the Diggles has had these proposed special conditions. They could have filed objections, consulted their attorney. They had plenty of time to read them at their leisure. And no objections were filed, although there were objections raised to other parts of the PSR. Just one point of clarification. It's not a major point, but the proposed special conditions are part of the PSR. They're actually not included in an appendix in the Eastern District. When the PSR is originally disclosed, there's the PSR and then the sentencing recommendation. That includes the guidelines calculations and then the recommended mandatory standard and special conditions. Now, the parties can file objections, and then the PSR, I mean, the probation officer resolves those objections in an addendum. So that's included in the revised PSR as an addendum, one or two pages. In this case, it was two, I believe. And then usually the same proposed sentencing recommendation, both the sentence and the supervised release conditions follow that addendum. Talking about pre-sentence notice, again, Rule 32 does not require it. The Supreme Court in the Azari case, 533 U.S. 715, has said that that's a sound practice. This court in the Coenen case, 135 F3D at 938, explained that pre-sentence notice provides a focused adversarial resolution of these issues. And the Seventh Circuit has a series of cases that address this issue. The Capps case, for example, that we discussed in the brief, explains that it allows defendants to provide an informed response. And there's been some talk at the various oral arguments and earlier today about alternative approaches. And both in the oral argument in the Diggles case and in Brevis Estrada, the example of the Northern District of Texas came up, and I believe Judge Lynn and Judge O'Connor's example. And their process is perfectly acceptable to our mind, but it's not as good. And there in the Northern District, they don't get pre-sentence notice of recommended special conditions. They get a piece of paper for the first time at sentencing that lists them, and they have an opportunity to object to them. But it doesn't seem like that is as valuable a right because you don't have time to, I mean extensive time to consult with your attorney and file written objections, and you don't have time to present evidence to rebut conditions that you don't think should be applied. Of course, there is the remedy at sentencing that you can ask the sentencing judge for a continuance, but the likelihood of that happening is not very great just for fear of irritating the judge. So they get the pre-sentence notice, and then at sentencing, complying with Rule 32, our judges ask both defendants and their attorneys, have you read and understood the PSR? And I use the example of Brevis Estrada because a large focus of the Diggles' briefing in this case talks about non-native English speakers. And in Brevis Estrada, for example, Judge Mazzan asked Mr. Brevis Estrada, have you received, read, and understood your PSR in your native language? And he said yes, and the attorney said, I provided him with a translated copy, which he reviewed, and we discussed it together. So there is no concern about misunderstanding the language used in the PSR. There's an opportunity for objections when the district court asks those questions and then adopts the PSR either in whole or in part. As Brevis Estrada mentioned at 348 of the opinion, Brevis Estrada had no comments, changes, or objections to the PSR. And as you all know, what typically happens at sentencing, you go through the Rule 32 practice, and if there are objections, the district court resolves those objections, hears arguments from the counsel about the respective sentence that should be imposed, and then there's a pivot to the oral pronouncement phase. And the judge explains the 3553A factors, explains the term, imposes the term of confinement, and then tells the defendant whether supervised release will be imposed. And in all of these cases that are at issue here, they are imposed, and the judge tells the defendant that you shall comply with the mandatory and special conditions that are included in your PSR. That, we submit, is the oral pronouncement. As the court recognized in Reyes, there can be no mistaking about what special conditions the district court is referring to in that situation. And Brevis Estrada did say that in Brevis Estrada, and the same pattern fits in all these cases, that the district judge did not refer even glancingly to special conditions that Brevis Estrada is sentencing. We just believe that's not a fair characterization of what happened. And the same practice occurred in Reyes, and there the court said that the district judge explicitly referenced the special conditions, and we submit that that's the more accurate characterization. And then after the oral pronouncement of the term and the condition to supervise release, the defendant still has an opportunity, again this is discussed in the Mills case, after the oral pronouncement to further object. And that was not done here or in Brevis Estrada. Just talking about the virtues of this process, we discussed them in the brief. I've talked already about judicial notice. Of course there's judicial efficiency. Sentencing hearings are long. The judges in our district like this practice, and the panel in Diggles appropriately described this as a script, and that's exactly what it is. It's a sentencing script that the district judges read that says that you shall comply with the mandatory and special conditions that are included in the PSR. It also fosters accuracy. Just in researching this and preparing the briefs, I mean there are countless cases where special conditions are read and something's missed, either a condition entirely that might have been included in the PSR and then turns up in the judgment, or they might not read a few words, and then that creates a conflict. And, I mean, the reality, I don't know, but I suspect that what happens in a lot of cases is the court has a copy of, an electronic copy of the PSR, and they just cut and paste the special conditions that are listed there, and that ensures accurate judgments. It provides an incentive to defendants to object. The Diggles' discuss Judge Posner's discount rate factor at sentencing, that the defendant isn't concerned necessarily at sentencing about conditions of supervisory release, and that's a fair point, but I think that the Eastern District's practice helps to avoid that. It incentivizes defense attorneys to tell their clients, look, you're not going to care about this at sentencing. You're going to care about the number. You may be shook by the number of the term of confinement. So spend time, look these over. Again, in Diggles' case, they had half of a year. And tell me which ones you think don't apply to you, and I'll file objections, or I'll make arguments at sentencing. And the government wants defendants to object if a condition is inapplicable. I mean, we have no reason, and the probation office has no reason to impose conditions that just don't make sense for a particular defendant. If we disagree, if there's an objection before sentencing, we can present rebuttal evidence and hopefully achieve a just result. There's also the concern of just fairness to the district court, and that goes to the air preservation issue. The only party in this whole series of cases that does not receive notice of any concern about the special conditions is the district court. They're blindsided on appeal when these issues are raised for the first time, and they have no opportunity to fix the error. And that was addressed in opening, and that's actually what I was going to conclude on. It's true, the standard remedy in these cases, if there's a conflict between the oral pronouncement and the judgment, is striking the conflicting provisions. I'm not sure why that's the case. It's certainly ingrained in the law, and I think it's pretty much a nationwide practice, but it doesn't seem to make a whole lot of sense. It seems like remand for consideration so that the district court can't impose the special conditions it intended to impose and given an opportunity to explain why those conditions are necessary. To us, that would seem to be a better practice. In terms of the oral pronouncement— You're saying they should only be required to— He's still uninterrupted. He's almost released for three minutes and 40 seconds. Yeah. I'll finish up, Your Honor, and then I'll give back some time. But just briefly, one last thing I'd like to say is for the oral pronouncement. I mean, we just don't see why the oral incorporation by reference of the PSR is not an oral pronouncement. It gives the defendant notice as the panel opinion explained to Diggles. The whole point of all this is notice, and so at that point, the defendant has notice of what conditions he must abide by. There's no court that we've seen, none has been cited, that has ever said that that practice does not meet the oral pronouncement requirement. The 1st, 2nd, 5th, before Rivas-Estrada, 7th, 9th, and 10th all have endorsed the practice or at least said that there's no constitutional problem with it. And with that, Your Honors, I would cede the rest of my time. All right. He's open for questions. If a court imposes a special recommended condition, your view is that they shouldn't have to offer an explanation unless it goes back on remand for them to offer an explanation? No, Your Honor. Shouldn't they explain it when they impose it? I don't know that there's a requirement that for each particular special condition, a district judge has to give a particularized explanation for that. What this Court's cases say in cases like Alvarez and Salazar is that special conditions must be supported by factual findings. I read that to say that somewhere in the record, there must be a factual support for those special conditions. Here, for example, the no gambling condition, that would be supported, for example. One, it was a fraud case, and two, that restitution was imposed. I guess— Counsel. A couple of things on the 5D1.3D4, having to do with what a court has reason to believe. So if a court has a reason to believe that a defendant is an abuser of narcotics or a controlled substance, if a court has a reason to believe that a defendant is in need of psychological or psychiatric treatment. Let's say something is in the PSR that says the defendant had a substance abuse problem, went to treatment, and successfully completed treatment. Then the judge imposes a special condition having to do with getting further treatment without any explanation because it shows up in the written judgment. That isn't a situation where you think the judge ought to have to give reasons because this is the if the judge has reason to believe. So it seemed to me it would be important to know what the judge's reason is to believe it. Right, Your Honor. And I think a point to be made here is the distinction between the issue of a 3553C articulation requirement and the oral pronouncement. What you're getting at is more the 3553C. And there are cases where it's debatable whether a certain condition, even if the PSR might show that they had a drug history 10, 15 years ago, whether the timing isn't appropriate here. So I would say on a properly preserved objection to that where they raise the 3553C objection at sentencing or a substantive objection, look, this just doesn't apply to me because for these reasons I've gotten treatment and I'm well now. One, that helps the judge just make a more informed decision of whether the condition is appropriate to impose. So if that were a preserved objection, that would be debatable on appeal. If it was not preserved, I can't see how that would possibly succeed on plain error. Judge Elrod had a question. I have two questions. One's just about a statement you made during uninterrupted time about your practice. I agree with you. The whole point here is notice. So then it gets sort of intricate. What is oral incorporation? And you mentioned that in your district, probation will do an addendum that lists the recommendations. But Rule 32 does allow probation to give recommendations in camera. So is your statement to us that that addendum is always disclosed to the defendant so they have notice? Correct, Your Honor. Okay. And just it probably doesn't matter, but it's actually not an addendum. As long as it's given to the defendant, they have notice. Your rule of law is they have to object.  Correct, Your Honor. But isn't the corollary of that, that if somehow it gets overlooked or the district court doesn't say I'm incorporating what's in the conditions, at that point, the corollary is the government can't enforce something that appears for the first time in the J&C. And that's, to me, where it's difficult because, and it gets back to the question you said, you don't know what the law is other than it is uniform in the nation, what doesn't make sense to me, which is most of these rules I still think benefit defendants reentering, and they're vital to victims. So if it truly is an oversight, it makes no sense to me that our court can't remand. And to me, that seems built into the fact that you can correct under 35 and 36 an error at any time. Plus, you can always modify and even enlarge conditions. So why would the rule be we have to strike them? I don't know. I don't understand it, Your Honor. And that's fine. We may or may not have to figure that out, but it just seems to me the body of law is very troubling. But the question I will put you on the spot for is in your brief, you seem to endorse a whole new category of true special conditions to resolve any of this. And my instinct is simplify it only to what the statute says. They're either mandatory. It would be error not to include them. Discretionary, if it slips through, there was no Rule 32 focus speaking in mitigation of, error. Possibly harmless, but it is always error. Not reference to special and additional and standard and true special. Yeah, it was really just kind of a briefing device just for kind of shorthand of what we're talking about within the brief. But the reason we did it is because of the jurisprudence distinguishing between mandatory, standard, and guidelines 5D13D recommended guidelines conditions. That's the Torres Aguilar principle. So I think it comes from that and why we made that set of categories. Is it helpful, though? You've thought about this at depth. Should we deviate from 3583 and turn to those various categories plus the one you've added, the true special one? Yeah. Well, I don't know that we're adding one, but it's just a different name to it. I think the courts already have the way they approach these various conditions established, and we would not recommend a change to that, to Torres Aguilar. Judge Elrod has a question for you, and Judge Jones has one following her. Counsel, to the extent that we're not just trying to decide if the Eastern District practices are appropriate, but we're also looking to see perhaps what is a rule in this circuit, I think you talked about Judge O'Connor's practices and Judge Lynn's practice and where they get it the day of in writing and they sign and they can take a break and all this sort of thing. What happens in the situations where they don't get it before and it's only been in camera with the judge and then the court says, I adopt the PSR, the recommendations? In that situation, what rule would the government have for us? In that situation, Judge Elrod, would that be at the day of sentencing that there's some chamber's discussion about? Well, I don't know whether the probation goes to the chambers the week before or the day of or the day before. I don't know when the day is. But, you know, sometimes they only give the addendum with the—or whether it's called an addendum or not. I know you were talking to Judge Higginson. They only give that document of what their recommendations are to the court. Well— You know that's the practice in the Southern District in some courts, for example. I would say at some point the defendant would have to be presented with the actual proposed conditions. But for enough time to meet with your lawyer and get them translated and do all of that sort of thing and have an opportunity to file written objections, do you think that should be part of the rule? Well, that goes to the issue of in terms of like should this court fix a rule? Well, I think the way the Seventh Circuit does it is wise in the sense of just calling them best practices, that they're not necessarily constitutional requirements, but they are practices that a court should follow. I think what our district does largely tracks what the Seventh Circuit has recommended as best practices with the pre-sentence notice. I don't think there's anything unconstitutional about presenting the defendant at the day of sentencing, presenting a list of conditions, giving them an opportunity to file oral objections. I just don't think that that's— But I thought they're supposed to get the PSR well before the sentence and have an opportunity to make written objections. They are, Your Honor, but the recommended special conditions don't have to be in the PSR under Rule 3. Right. So you think you can give them that day and then they have an opportunity to make oral objections at the hearing, even if they're not specifically referenced, or when is it that they're supposed to make these objections and have enough time to discuss it with their client? What's the best—even if you don't believe it's required for due process, what's the best practice for this circuit? I think the best practice is really a model of what the Eastern District does in the sense of even though Rule 32 doesn't require it, give defendants the proposed recommended special conditions at least 35 days in advance of sentencing, allowing them to provide written objections, or if they don't do that, at least have an informed argument and possibly evidence to present at sentencing. We do not have before us, do we, a case in which a special condition appeared in the judgment that had not been presented to the defendant before? No, Your Honor. Okay. So all this business about something that surprises the defendant is irrelevant to this case. The other question is, we've had a bunch of cases about a defendant being required to report and surrender to immigration when one of the conditions, I don't know whether it's mandatory or it's special, was that the defendant shall not be illegally present in the United States. So it would seem to follow as a matter of course. What kind of condition is that? Is that mandatory, special, optional, special, special, or what? In other words, how do we draw a rational dichotomy between, or why should we draw any dichotomy among conditions other than what Judge Higginson said is in the statute? I think, Your Honor, and with the caveat that I'm not entirely sure, but I have seen cases kind of on that point, and I think that there is a statute, and I could be wrong, so don't quote me on it, but I think there is a statute that if you're in the country illegally— Don't quote you, and you had oral argument, and you said no. You would be quoted. I think that there is a statute that requires, if you're in the country illegally, to be deported upon your release. Now I think where it gets tricky is if the court imposes an additional requirement in a condition of supervised release about the timing of it, immediate surrender to the probation office, and some such thing. So I think to the extent you deviate from what's in the statute, that could be characterized as a special condition. That seems to me an irrational distinction. Well— It follows necessarily— Well, what I was really—I mean, we've had that subset of problems, and what I was really trying to get at was, and maybe you're saying that smart lawyers are going to try to exploit every technical deviation, but if the judge just says, apparently the mandatory conditions do not have to be orally pronounced, right? That's correct, Your Honor. So the judge says there are other conditions, any objections? What's wrong with that? I don't think there is anything wrong with that, and I'll tell you my reaction, because the very first condition that was at issue in Rebus Estrada, it was labeled in the PSR and ultimately the judgment as a special condition, and it was essentially the report for deportation because Rebus Estrada was in the country illegally. And it struck me as, my gosh, why is that in the special conditions if it's something that— I mean, it's just common sense that by law he cannot be in the country. Like why would that be struck when it's something that has to be done anyway? And I think that goes to the point we were talking about earlier about the remedy, and it seems like what would make most sense here is if there is any sort of issue about a conflict or if there is a true conflict that it is remanded for resentencing. If there isn't a case directly on point, what would be your best Supreme Court case that would support this court doing that? I don't know of any Supreme Court case that talks about special conditions of supervised release. I mean, there are cases, Irizarry, that talk about sound practice in terms of giving pre-sentence notice. I'm talking about the remedy, what would be your best Supreme Court case that would say it would be due process would not prohibit us from remanding for resentencing as opposed to excising the conflicting piece of the special condition from the judgment? I'm sorry. I understand that, Your Honor. And I don't know about the Supreme Court. I will say it's like the somewhat analogous 3553C articulation requirement, and there you look at cases like Alvarez that's cited in our brief, and Alvarez relies on Salazar, where the remedy in those situations is a remand for reconsideration consistent with the opinion. And we already do something similar. Sometimes we'll say that there's an ambiguity between the two rather than saying there's an actual conflict. We've been doing that a lot frequently, haven't we? And then we send that back for the remand. Right. And so it's not—sometimes it's not an outright conflict, and we just say, well, there seems to be some tension here perhaps, and we're going to send it back and let the court say. So we, at least in that circumstance, do allow to remand rather than just striking it. Right, and I think that makes sense. Is there a Supreme Court case that says if there's a conflict, the only remedy is excising, you cannot vacate and remand? I don't know a Supreme Court case. I do know what they refer to as just the oral pronouncement requirement. They say, well, the sentence is the oral pronouncement. So if something was omitted in the written judgment, whatever turns up in the written judgment that wasn't in the oral pronouncement is basically excised. That's doctrinally where it comes from. I don't know why that would be the only remedy. You know, the illegal immigration and deportation, some of that strain comes from St. Cyr, and you recall the challenge to the courts. That's usually seen as a habeas case because it was a mechanism to challenge the decision that the Attorney General made that they had no discretion with regard to deportation. That was challenged and was upheld. But meanwhile, we had people taking pleas in which that condition had not been explained. So in the context of disclosure to effectuate a plea, we had that difficulty. But that's somewhat related to but it's quite distinct from the difficulties of intending a sentencing. But the sentencing phenomena was really the St. Cyr phenomena. Counsel, I'm sorry, did you have an answer or comment to Judge Higginbotham? No, only to say that to the extent something is required with respect to immigration already by statute, it would kind of fall in line to the extent it relates to the oral pronouncement issue, kind of like a mandatory or standard condition, and it goes to the issue of constructive notice. In those cases, defendants and their attorneys would have constructive notice because it's in the federal code. Counsel, back to the hypothetical that Judge Higginbotham raised earlier, where a whole bunch of conditions are just listed but not recommended or said, this would be good for this defendant because of X, Y, Z in the PSR, and it's just listing a panoply of them. Is that, and then you adopt that at the hearing, you say, I adopt the PSR, and then you only give some of the conditions in the judgment. Is that appropriate? I think in that case you would have a conflict between the judgment and the oral pronouncement because what happened at the oral pronouncement, they were incorporating all of those and only some turned up in the judgment. Well, they are incorporating all of those if they're just listed not as recommended in any way, but just being listed as these are all the possible ones. Oh, well, in that case, no. Well, so is it a conflict? But is there a notice? Is there pronouncement? Is there some problem with notice that those are actually going to be imposed in that case? I think there you would have a notice problem because it's no different than just the universe, basically. You give them the book and say these are all conditions that have been used in this district. Right. Yeah, that would be problematic. Any other questions for the government? Counsel, I'd like to ask both sides. Perhaps you can add this to your rebuttal list, but we're talking about notice and we're spending time talking about the importance of the oral pronouncement. It seems pretty clear that the district judge cannot add special conditions to the J&C that were not in the PSR and not at the oral pronouncement. What of conditions that the district judge finds necessary to add at the oral pronouncement that are not in the PSR to begin with and that the first time the defendant hears them is when the district judge is on the bench and starts listing them? But he does orally pronounce a condition or two that were not previously set forth. Is there any type of infirmity with that procedure? I don't think so, Your Honor, so long as the defendant, in that case, is given an opportunity to raise an objection to those new conditions and that as part of the oral pronouncement it would seem there that the district judge would have to say I'm incorporating the special conditions that are in the PSR that weren't objected to and these additional special conditions and in that way the oral pronouncement requirement would be satisfied. Any other questions for the government before he sits? All right, I see none. Thank you, sir. Thank you very much, Your Honors. Gretzky, you're back up for rebuttal. Mr. Stewart, let me answer your question and then turn to Judge Owens and to Judge Haines and then to Judge Englehart. To answer your question directly, Judge Stewart, of course, my task as Mr. Diggle's lawyer, and we're totally aligned with the other Diggles, is to advocate for his positions here in this court. So our highest level of objective would be to walk out with all four conditions removed. If we can't do that, then to hold on to the win as we had it from the Diggles panel, which is to completely excise the no gambling condition and then furthermore the modification to the credit condition. That being said, well, of course, that's our task. Nevertheless, since we are at en banc and the prior opinion, this revus estrada, which came down almost a year ago, specifically said that there was a problem of all these unpublished opinions going different ways, Cox unsuccessfully, and then other cases where the defendant had prevailed, and that furthermore I believe the exact words that Judge Willett said in the opinion was that the authority of this court was uneven. I believe the phrase was uneven there. And at the oral argument, which I've listened to several times, Judge Elrod specifically asked Mr. Ross and Ms. Hagins, the lawyer who represented the U.S. Attorney's Office in that case, if they thought a rule of general application across the circuit would be advisable and both, including Ms. Hagins from the U.S. Attorney's Office, said that it would be. That was the reason that in the Diggles en banc brief, we specifically said there's no doubt that all the Diggles family speaks English, to be sure, but the problems as we've identified them are accentuated first with folks who only speak Spanish and then further removed, a very common language obviously spoken in this circuit, and then further these other sort of, let me say, less commonly spoken languages. In Houston, if we go to magistrate court, there's translators translating of any given day ten different such languages. That's one of the reasons why I think there should be some problem with what Mr. Visosky said, which is that, oh, if these conditions just appear for the first time, you know, ten minutes before the sentencing hearing or in the middle of the sentencing hearing, that the defendant can be said to have had a meaningful opportunity to object. It's nice to say the defense lawyer, when he gets them, should go take a break with his client and go talk about them, but if that defendant is speaking Tagalog, for example, and the lawyer only speaks English, that lawyer, in all likelihood, doesn't have a translator with them. The only translator would be the one that's in the courtroom. I don't think there is a meaningful opportunity in that circumstance for anyone to discuss those conditions. That's why we looked at the broader implications here. Judging answering the question that you posed, also to Mr. Visosky, I agree that that is the nationwide practice. The best answer I can get you at present, while I sat down, I went and looked at the Wright and Miller quote on page two of our en banc brief, and it does say that if there is a divergence between the oral pronouncement and the written judgment, the exact word that that Wright and Miller used there is void. So I don't know if I can tell you the reasons why that's the doctrinal state of affairs. I would agree with Mr. Visosky that's the nationwide practice. It allows a modification, even an enlargement. If you're under Wright with that principle, the government can immediately move to get back what everyone expected would be imposed. Don't dispute Judge Higginson that there's no doubt the government could perhaps move on an ex post basis to try to put other conditions in there or to recalibrate. Sure. I don't think there's a gotcha game, Judge Higginson, as much as the situation is that there should be, perhaps in the interest of finality, the one chance for someone to be punished. For example, once one is released from a criminal justice sentence, the court can't say, you know, you haven't been punished enough, let's impose a fine on you.  The idea is that there should be the one. Sure. So, Judge Rohn, I think the answer to your question, as best as I can give it to you as I stand here, is that is the doctrinal reason. But I don't know that the government really wants to go back for new hearings where this can all be fleshed out again for a couple of reasons. One, I can assure you or I predict you will likely see a next appeal on predictiveness grounds. The argument will be, well, the district judge didn't impose this orally the first time. The fact that they imposed this the second time. And now you'll have another appeal to deal with. Secondly, on remand, I believe defendants under Supreme Court law are allowed to bring forth evidence of post-defense rehabilitation, and they might be asking to reopen their sentences in some other way. Or somewhat a species of the question Judge Englehart posed to Mr. Vesosky at the end of his time, which is that, well, then what happens if now there's some additional conditions? Maybe even they get advance notice of it, but now we're looking to even broaden not from four conditions but to six or eight or so forth. And to answer your question about no gambling, the best answer I can give you at present, on page 19 of the Diggle's panel opinion, the direct quote, the guidelines do not include no gambling as a condition of recommended if restitution is ordered. So perhaps the guidelines— That doesn't mean it can't be a special condition. Correct, yes. Which means that we can't—you know, following Revis Estrada, the panel concluded we couldn't just infer that. But that isn't a case that says you can't impose gambling restriction in the absence of evidence that someone has a gambling problem when they have a restitution order for a large sum of money, and gambling could mean they lose money that they otherwise could pay the restitution with. May I answer briefly? Yes. Hence, to answer your question, under 3583D, a discretionary condition must be, quote, reasonably related to one of those four factors, nature of circumstances, deterrence, protection of the public from further crime to the defendant. Why doesn't this protect the public? Protect the public from further crimes. And is part of the nature and circumstances. If we're talking about legal gambling, a casino here in New Orleans, for example, Harrah's or something, I don't think the gambling can be said to be a further crime. It would be a legal activity, at least where gambling is legal. That might be true, but why doesn't it relate to the nature and circumstances, which is you owe a lot of money, you shouldn't be, I mean, any credit condition, any condition on your finances is intended to further the restitution. Why is that not proper? It doesn't have that backstop problem of the not able to use the computer so I can't get a job kind of thing that we have with other cases. Because there's no constitutional right to gamble, as far as I know. I don't think there is. And that's not unique to Rivas Estrada. That's Martinez, Hudson, that you were supposed to pronounce and the condition that's not mandatory has always been the rule for a long time. Let me just answer the question that you asked me. The very first of those 3553 conditions, the nature and circumstances of the offense and the history and characteristics of the defendant. So absent some history of gambling addiction or just like family violence, absent that personal characteristic, which is completely different. Is there a case that says this, though, because these gambling restrictions I've seen in a lot of cases where there's no indication of gambling. You're basically saying that can never be imposed in the absence of evidence that somebody has a gambling problem when there's a financial restitution situation. That's your position. What case supports that? I'll try to answer succinctly, Mr. Kretzker. Yes. I think a defendant can certainly mount an appeal that is substantively inapplicable, absent a history of some sort of gambling addiction. All right. Any other questions of Mr. Kretzker before he steps back? All right. Thank you, Mr. Kretzker and Mr. Buzoski. That concludes the arguments in the Diggles case. That concludes the three cases that we had oral argument in. We appreciate your briefing, your oral argument. The case will be submitted. The attorneys in the audience, you are excused to exit the courtroom quietly. The court's going to remain in place briefly for a ceremonial moment,